[PHILADELPHIA, FEBRUARY 18th, 1837.]

## WARNER'S ESTATE.

### APPEAL.

The Orphans' Court has no jurisdiction to determine the validity of the claim of an
alleged creditor of a decedent: The remedy of the creditor must be pursued in the
courts of law.

BENJAMIN WARNER, of the City of Philadelphia, died in the month
of September, 1821; having made his last will and testament as
follows:—

"Be it remembered, that I, Benjamin Warner, of the City of Phi-
ladelphia, Bookseller, being of sound mind, memory and understand-
ing, do hereby make my last will and testament, in manner following,
that is to say—
First—I will that all my just debts and funeral expenses shall be
duly paid and satisfied, for which, and other purposes hereinafter
declared, I do hereby nominate and appoint my brother, Joseph
Warner, and my brother-in-law, Redwood Fisher, executors of this
my last will and testament.
Item—I give and bequeath to my beloved wife Lydia, one annu-
ity or yearly sum of two thousand five hundred dollars, commencing
from the day of my decease, and to be paid to her out of any

(Warner's Estate.)

moneys of my estate, in quarterly payments, for and during all the term of her natural life. Moreover, I give to her, my said wife, all my household goods, kitchen furniture, horses, carriages, plate, and all other articles and things purchased for family use.

Item—I give and devise unto my said brother, my interest in the Cherry Hill Estate, to hold to him for and during all the term of his natural life. The mortgages on that property, I direct shall be paid by my estate.

Item—I do hereby authorise my executors to purchase any real estate which I hold as security for any debt or debts, for the purpose of securing such debts, and to take the conveyances for the same in their own names, and to sell, rent, or convey the same whenever they may see fit, for the benefit of my estate. And I do hereby authorise my said executors, or the survivor of them, to make any disposition they may think best, of my brewery, at Cincinnati, in the State of Ohio, and the land belonging to the same, either to continue the business there, or to exchange the said estate for other property, or for any securities, and to sell, dispose and convey the premises taken in exchange.

Item—I do hereby authorise and empower my said executors, to sell and dispose of all my real estate, whenever they may see fit, at and for the best price that can be reasonably obtained for the same ; and upon receipt of the purchase-money or security therefor, by good and sufficient deeds, conveyances and assurances in the law, to grant and convey the same unto the purchaser or purchasers thereof, his, her or their heirs and assigns, in fee ; and until such sales, that the same shall be and remain, in the management of my said executors. And it is my desire that my said executors shall collect in all my outstanding debts, as soon as the same can be conveniently done ; and from thence, and from the moneys arising from my real estate, and from any other sources of my estate, that they pay and satisfy the debts due and owing by me ; and until such payments can be made, that they in their capacity as my executors, may give or endorse any note or notes from time to time, in renewal of notes given or endorsed by me, until the debts due thereon shall be fully paid and satisfied ; which notes so to be given or endorsed by my said executors, or the survivor of them, shall be as fully binding on my estate, as those originally given by myself. And forasmuch as a precipitate sale of my stock in trade would be highly disadvantageous to my estate, and being satisfied that my business might be carried on to advantage, I do therefore authorise and empower my said executors, and the survivor of them, either by themselves, or by persons by them to be engaged for that purpose, to carry on and continue my business, at the risk and for the benefit of my estate, so long as they may see fit, upon the same plan as I have conducted the same, which will appear from my books of account ; to the end, and with a view that any or either of my sons,

(Warner's Estate.)

in the sole discretion of my said executors, or the survivor of them, may succeed to the business, and take the establishment on his or their arriving at the age of twenty-one years, on such terms and conditions as my said executors may. see fit.'

And it is my mind and will that so long as my executors, or the survivor of them, shall continue to carry on the said business, that the store and premises now occupied by me in High street, shall and may be held and occupied for that purpose.

Item—I direct my executors that the moneys which shall come to their ·hands from the debt due to me by my brother-in-law Redwood Fisher, shall be applied by them, immediately on receipt thereof, one-third part thereof in the purchase, from the Life Insurance Company, of a sum of money, payable to his son William R. Fisher, if and when he shall arrive at the age of twenty-five years; another third in the purchase from the same company of a sum payable to his son Samuel G. Fisher, if and when he shall arrive at the age of twenty-five years; and the remaining third thereof, in the purchase from the said company, of a sum to be paid to his son, Miers Fisher, if and when he shall arrive at the age of twenty-five years.

And all the rest, residue and remainder of all my estate, whatsoever and wheresoever, I give, devise and bequeath unto all my children, their heirs, executors, administrators and assigns, to be equally divided between them, part and share alike, when they respectively shall arrive at full age. And I do hereby nominate and appoint my said wife, and my said brother Joseph, and my said brother-in-law Redwood Fisher, guardians of the persons and estate of my said children. Provided, always, that whatever I have hereinbefore given to my said wife, is in lieu and full satisfaction of her dower and thirds of and in my estate. Lastly, I do hereby revoke all wills and testaments, by me at any time heretofore made and published, and declare this only to be and contain my last will and testament."

Joseph Warner, one of the executors, settled certain accounts of his administration, which in the Orphans' Court were referred to auditors, who made a report containing the following, among other matters.

" The executor has himself made distribution of the assets, which came into his hands, by paying the specialty debts in full, and a dividend of eighty cents in the dollar, on the debts by simple contract. The estate not being quite sufficient for this dividend, the executor has advanced out of his private funds, nearly two thousand dollars, as will appear by the last account. It remains to be inquired, whether the distribution which has been made, is correct.

The only person who makes any objection to the distribution, is

(Warner's Estate.)

Daniel Man, who alleges that he has a subsisting demand against the estate, upon which he is entitled to a dividend. His claim, as submitted to your auditors, is founded on six promissory notes, drawn by the testator in favour of Joshua & Thomas Gilpin, and by them indorsed in blank.

| No. 1 | dated | 8 | month, | 25th, | 1821, | at two months for | $457 | 10 |
|---|---|---|---|---|---|---|---|---|
| 2 | " | 7 | " | 13th, | " | five " | 806 | 10 |
| 3 | " | 9 | " | 18th, | " | three " | 430 | |
| 4 | " | 9 | " | 18th, | " | three " | 510 | |
| 5 | " | 7 | " | 23d, | " | five " | '650 | |
| 6 | " | 8 | " | 16th, | " | six " | 802 | 12 |

All these notes fell due after the decease of the testator, and were protested at maturity for non-payment.

Mr. Sergeant on behalf of the executor, stated that these notes had always been disputed; that no claim had ever been made under them, till the year 1828, when payment was refused; that an action was brought upon them in the District Court, for the city and county of Philadelphia, on the 6th of December, 1828, to which action the executor, on the 7th of October, 1831, pleaded the statute of limitations, which plea had not yet been replied to, and that the action was still pending.

Mr. Wheeler, on the part of Daniel Man, contended that the plea of the statute of limitations, could not be interposed as a bar to the claim, because the executor is a trustee for the creditors. In support of his position, he cited and relied upon the case of *Johnston* v. *Humphreys,* (14 *Serg. & Rawle,* 394.)

Your auditors are of opinion, that the case before them does not come within the principle of that decision. The right of an executor to plead the statute of limitations against a person, claiming as a creditor of the estate, has never been questioned. The executor owes it to the distributees, (and where the estate, as in the present instance, is insolvent, to the creditors,) to plead the act of limitations against claims of which he has reason to suspect the validity. The doubt has been, whether, in such a case, the other creditors might not compel the executor to plead the statute contrary to his own inclination. *Case of George Smith's Estate,* (*Ashmead's Reports,* 352.) In this case the statute had not commenced running at the testator's death, but in the opinion of your auditors, that circumstance does not affect the question. As the claimant will have an opportunity of taking the opinion of the court upon the matter, and as they have stated in this report, all the material facts upon which he relies, your auditors do not conceive it necessary to go into a full discussion of the question of law, which has been raised. Considering the plea set up on the part of the executor as a complete bar to

the recovery of the claim, your auditors report that Daniel Man is not entitled to any dividend, and that the distribution already made by the executor is correct, and should be confirmed by the Court."

On the coming in of the auditors' report, exceptions were filed on the part of Daniel Man; and after argument, the Orphans' Court overruled the exceptions, on the 17th of September, 1836, the following opinion being delivered by Judge J. R. JONES.

" The case before us presents a single question, whether an executor can in equity plead the statute of limitations, in bar of a claim which falls due after the death of his decedent.

That an executor is in equity treated as a trustee for persons interested in the distributive succession of his testator, cannot be doubted. That a trustee in some cases, cannot plead the statute of limitations is indisputable. That all cases of trust are not exempt from the bar, is equally clear.

The first step in this case is to discriminate between trusts barred by the statute and such as are not; to settle some practical *criteria* for testing the general applicancy of the statute to trusts.

The early principles are exceedingly vague. In some authorities we find the position, that *trusts in general*, in others that *direct trusts* are not barred by the statute. But these general expressions were soon qualified. Modern cases gradually narrowed the limits of the doctrine, and at length have defined it with precision. It would be labour lost to follow step by step, the long and tortuous series of cases down to *Kane* v. *Bloodgood*, and *Murray* v. *Koster*, in which the final results are accurately developed, and to *App* v. *Driesback*, the Pennsylvania case, which recognises those New York cases, and renders them conclusive authority in this court.

The principle thus settled, give us these *criteria*. Trusts not barred by the statute must be

1. Direct and continuing.
2. Exclusively cognisable in equity.
3. Arising between trustee and *cestui que trust*.

In explanation of the second of these *criteria*, the language of Chancellor KENT is very explicit. A party, he lays it down, is barred in equity, whenever he could have brought his action at law, and neglected to do so, until the limitation of the statute intervened.

But clear as the New York cases are, a shadow of doubt seems thrown on their authority by *Johnson* v. *Humphreys*, (14 *Serg. & Rawle*, 394,) in our own Supreme Court, which has been strenuously pressed for the exceptant. Here the Court say, that the trusts exempt from the bar are, 1st, direct and continuing. 2d, arising between trustees and *cestui que trust;* and the other qualification of being exclusively cognisable in equity is omitted; an omission the more remarkable as *Kane* v. *Bloodgood*, is cited as authority. Whether

*Johnson* v. *Humphreys,* be irreconcileable with the New York cases need not be particularly investigated, since those cases are conclusively authenticated by the subsequent authority of *App* v. *Dreisback,* (2 *Rawle.*)

The second of these *criteria,* applied as a test, settles the question before us. The exceptant's claim is not a trust exclusively cognisable in equity, it is in fact primarily and properly enforceable at common law. This court takes no cognizance of such claims as the present, except indirectly and from necessity. The proper forum is a common law court. But, says the exceptant, there is a statutory restriction on a creditor's power of enforcing his claim in a common law court, and thus, that the present case is brought even within the rule we lay down. That partial restriction was enacted in 1834, (35 sec. act 24 Feb. p. 80,) long subsequent to the exceptant's claim; and in the present case assuredly does not operate, whatever may be its general effect; which we are not now required to consider.

The exceptant's claim not being one of those trusts which are beyond the pale of the common law, and exclusively cognizable in equity, is thus barred by the statute of limitations. Whether in any case where the existence of the relation of trustee and *cestui que trust,* is part of the subject-matter of controversy, as it is here, the statute would not bar, we need not examine; the question being settled on the second of our tests, without the necessity of recurring to the third.

In this case the exceptions are dismissed, and the report of the auditor confirmed."

An appeal was taken to this court by Daniel Man.

Mr. *Wheeler,* for the appellant, contended that the claim of Man ought to have been admitted. The essential fact (he said,) was that the notes fell due after the testator's death. There is a clause in the will providing for the payment of debts. The act of limitations is applicable only to the common law courts. The statute only runs after death, when it had begun to run in the lifetime. The form of pleading shows this. 2 *Chitty's Plead.* 423. *Fritz* v. *Thomas,* (1 *Wharton's Rep.* 66.) 1 *Schoale & Lefroy,* 109. The act does not apply, because at the time the notes fell due the fund was in the hands of a trustee. *Johnson* v. *Humphreys,* (14 *Serg & Rawle,* 394.) *Lyon* v. *Marclay,* (1 *Watts,* 275.) *Thompson* v. *McGaw,* (2 *Watts,* 161.) *Power* v. *Hollman,* (2 *Watts,* 221.) It is true that in *Smith* v. *Porter,* (1 *Binn.* 209,) it was decided, that when a debt is once barred, it is not revived by a clause in a will directing the payment of just debts; but here the debt never was barred. 2 *Ves. & Beames,* 275. *Blanchard on Lim.* 137. *Lovelass on Wills,* 313, note 7, (11th ed.) *Toller on Executors,* 288. 5 *Johns. Ch. Rep.* 224. *Rogers* v.

(Warner's Estate.)

*Rogers*, (3 *Wendell*, 503.)   *Torr's Estate*, (2 *Rawle*, 252.)   *Gray* v. *Bell*, (4 *Watts*, 410.)

The Court declined hearing Mr. *Sergeant,* who was to argue for the appellee.

PER CURIAM.—A creditor, though entitled to object to the credits or charges in an administration account, exhibited for settlement, cannot go into the Orphans' Court to recover his debt.   It is the executor, and not the court, that administers the assets.   The remedy is not in equity but at law; and the personal representative of the decedent is, for purposes of personal recourse, entitled to trial by jury, and every other constitutional advantage which might have been insisted on by him whom he represents.   The Orphans' Court has doubtless power to make distribution, but not among creditors. It can be made only when the debts are paid and the accounts settled; consequently only when there is no creditor to claim. We pretend not to determine whether the debt or contract is barred by the statute of limitations—that is a matter to be determined in an action at law—at present we say no more than that the creditor could not interfere with the distribution in the Orphans' Court; and that his exceptions, for that reason only, were properly disregarded.

Report of the auditor, and decree of the court affirmed.